IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STEPHEN W. CARMAN, | § | |
| | § | |
| Defendant Below, | § | No. 417, 2025 |
| Appellant, | § | |
| | § | Court Below—Superior Court |
| v. | § | of the State of Delaware |
| | § | |
| STATE OF DELAWARE, | § | Cr. ID No. K1007024813 |
| | § | |
| Appellee. | § | |

Submitted: May 7, 2026
Decided: July 14, 2026

Before **TRAYNOR**, **LEGROW**, and **GRIFFITHS**, Justices.

## <u>ORDER</u>

Upon consideration of the opening and answering briefs and the record below, it appears to the Court:

(1)     In 2010, Stephen W. Carman pleaded guilty to nine counts of dealing in child pornography in violation of 11 *Del. C.* § 1109(4). For each count, the Superior Court sentenced Carman to twenty-five years of imprisonment, suspended after two years for lower levels of supervision.[1] As such, Carman was sentenced to

---

[1] The term of imprisonment was the statutory minimum-mandatory sentence and consistent with the sentence recommended by the parties in the plea agreement. *See* 11 *Del. C.* § 1109 (providing that dealing in child pornography is a class B felony, "unless the prohibited sex act [depicted] is 'partial nudity'"); *id.* § 4205(b)(2) (providing that the sentence for a class B felony is "not less than 2 years up to 25 years to be served at Level V"). The original sentence order provided that Carman's incarceration would be followed by six months at Level IV halfway house, followed by two years at Level III probation. In March 2024, at Carman's request, the court modified the Level IV supervision to Level III with GPS monitoring.

serve a total of eighteen years before suspension. The sentencing order required Carman to be evaluated for and participate in a sex offender treatment program, as deemed appropriate by Probation and Parole, among other special conditions.

(2) Carman was released from prison in August 2024. Shortly after Carman's release, a probation officer filed a progress report requesting that the court add special conditions prohibiting Carman from having contact with minors, accessing the internet, and possessing or controlling a device with the ability to access the internet. The request was based on Carman's history of sexual offenses against minor victims, Carman's mental health evaluation, and the recommendation upon Carman's discharge from the Transitions sex offender program that he completed while he was incarcerated. The court modified the sentence order accordingly.

(3) In November 2024, a probation officer filed a progress report stating that Carman was compliant with probation and participating in the community-based sex offender treatment program. The program had advised that Carman met the criteria for participation in the Probation and Parole Computer Monitoring Program, which would allow limited internet access on an approved device and recommended that Carman be permitted such access while participating in the monitoring program. The court modified the special conditions in accordance with the recommendation.

(4)     In July 2025, Probation Officer Vorous filed reports and administrative warrants (collectively, the "reports") alleging that Carman was in violation of probation and conditional release.  The alleged violations included that Carman had been discharged, without successful completion, from sex offender treatment on June 27, 2025, and had spent approximately an hour and a half at an "ice cream shop/[mini golf] establishment" that "caters to children" and is a "popular and frequent location where children gather," during the establishment's "peak hours." The reports requested that the court revoke Carman's conditional release and sentence him to a term of incarceration that would be suspended upon successful completion of a treatment program to be determined in the Department of Correction's discretion.

(5)     Carman contested the violation, and the Superior Court convened an evidentiary hearing on September 3, 2025, to consider the alleged violations.  At the beginning of the hearing, defense counsel objected to the admissibility of a discharge summary from the sex offender treatment program because its author, Carman's treatment provider, was not available to testify. Defense counsel also argued that Officer Vorous should not be permitted to testify regarding matters that were in the discharge summary but of which he had no personal knowledge.  The State agreed not to submit the discharge summary but argued that Officer Vorous should be permitted to testify as to his knowledge that Carman had not successfully completed,

3

and had been discharged from, the treatment program. Reasoning that hearsay testimony is permitted in VOP hearings, the court determined that Officer Vorous would be permitted to testify to the extent he had been made aware of Carman's engagement with, and discharge from, treatment.

(6) During his testimony, Officer Vorous recounted a series of "concerning" and "alarming" behaviors that resulted in Carman's discharge from the community treatment program. These included that Carman hid photographs of his minor grandchildren after treatment personnel instructed him not to have them; collected contact information and other details about another sex offender's victim and sent the information for delivery to the offender in prison; and collected information about a person whom Carman said he had sexually abused in the past. Officer Vorous testified that he and the treatment provider had attempted to work with Carman regarding their concerns in order to keep him in treatment in the community, but Carman's visit to the ice cream shop was the "straw that broke the camel's back." Officer Vorous explained that he was conducting a routine review of Carman's GPS data when he observed that Carman had visited Tre Sorelle Dolce, an "ice cream shop with Putt-Putt, lots of games, [and] activities for children," from 6:36 p.m. until 8:08 p.m. on June 25, 2025. Officer Vorous spoke with Carman's treatment provider about it and "she was very upset" because, after years of treatment "in prison and out," Carman should have recognized that he should not go

4

to an ice cream shop designed for and frequented by children and should instead speak with his treatment provider about it.

(7) Carman's son testified that he invited Carman to meet him at the ice cream shop so that they could reconnect after Carman's years in prison. He stated that he did not see any customers or employees there whom he believed to be minors. He also testified that Carman did not speak to anyone else while they were there, except an older woman who used to work with Carman.

(8) In closing, defense counsel argued that there was no evidence that any children were present at the ice cream shop and that Carman's mere presence at the shop did not constitute a VOP and should not have resulted in his discharge from treatment. The State argued that Carman's visit to the ice cream shop was the culmination of a series of concerning behaviors that resulted in Carman's discharge from treatment, and the treatment discharge constituted a VOP.

(9) The Superior Court found by a preponderance of the evidence that Carman had violated probation. As to sentencing, the court revoked Carman's conditional release and previously earned good time credits, requiring that Carman serve the time remaining on his sentence through July 20, 2028, but did not sentence him to serve any additional time for the VOP.

(10) On appeal, Carman argues that Officer Vorous's testimony was inadmissible hearsay and that the evidence was insufficient to demonstrate that he

5

violated his probation. These arguments are unavailing. In a VOP proceeding, the State must prove by a preponderance of the evidence that a violation occurred.[2] "Hearsay evidence is admissible in VOP hearings," but if the defendant denies violating probation, there must be "some competent evidence" sufficient to "reasonably satisfy the judge that the conduct of the probationer has not been as good as required by the conditions of the probation."[3] "Although the State does not need to establish guilt beyond a reasonable doubt, probation cannot be revoked solely upon the basis of testimony from a witness who has no first-hand knowledge of the events constituting the violations."[4]

(11) The Superior Court did not abuse its discretion by admitting Officer Vorous's testimony and revoking Carman's probation.[5] The conditions of Carman's probation and conditional release required him to participate in sex offender treatment while in the community. Officer Vorous testified that Carman was discharged from treatment without successful completion and recounted the various events that resulted in the discharge. The officer had first-hand knowledge of many of those events. For example, he had ongoing discussions with the treatment

---

[2] *Kurzmann v. State*, 903 A.2d 702, 716 (Del. 2006); *see also Coleman v. State*, 289 A.3d 630, 2023 WL 28708, at *3 (Del. Jan. 3, 2023) (TABLE) ("The same standards apply to a violation of conditional release.").
[3] *Jenkins v. State*, 8 A.3d 1147, 1152 (Del. 2010).
[4] *Id.* (internal quotations omitted).
[5] *See Jenkins v. State*, 862 A.2d 386, 2004 WL 2743556, at *1 (Del. Nov. 23, 2004) (TABLE) ("Our review regarding the admissibility and the sufficiency of the evidence [presented at a VOP hearing] is for abuse of discretion.").

provider about the course of Carman's treatment and the concerns about his progress; they worked together in an attempt to keep Carman in treatment in the community. Officer Vorous reviewed Carman's phone data through the monitoring program and observed Carman's involvement in conveying information to another offender about that offender's victim. And Officer Vorous's discovery from the GPS data that Carman had gone to the ice cream shop culminated in the treatment provider's decision to discharge Carman from treatment.[6]

(12)  Carman also argues on appeal that his counsel was ineffective in various respects. We will not consider these claims for the first time on appeal.[7]

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ Abigail M. LeGrow*
Justice

---

[6] Officer Vorous also testified regarding an incident in which Carman gave another individual who was on GPS supervision and had cut off his GPS device a ride to Wilmington. On appeal, Carman argues that the State withheld data from the other passenger's GPS device, which purportedly would have shown that Carman was not involved in removing the other passenger's GPS device. Carman has not shown that any exculpatory information was withheld; the court heard information suggesting that the passenger's device was removed before his ride with Carman. In any event, that incident appears to have had little bearing on the court's determination that Carman violated probation by being discharged from sex offender treatment before completion.
[7] *Holland v. State*, 337 A.3d 1268, 2024 WL 5265274, at *2 (Del. Dec. 31, 2024) (TABLE).